IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| In re Motion of<br>    CHEVRON CORPORATION,<br><br>                Petitioner,<br><br>To Compel the Production of Documents from<br>    THE WEINBERG GROUP,<br><br>                Respondent,<br><br>In Connection with a Civil Action Pending in the United States District Court for the Southern District of New York. | Civ. Action No: 1:11-mc-00409-JMF |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF RESPONDENT WEINBERG GROUP AND DEFENDANTS HUGO GERARDO CAMACHO NARANJO AND JAVIER PIAGUAJE PAYAGUAJE'S EMERGENCY MOTION FOR STAY OF ENFORCEMENT OF THIS COURT'S SEPTEMBER 8, 2011 MEMORANDUM AND ORDER (DKT. 24) AND SEPTEMBER 13, 2011 ORDER (DKT. 30) PENDING APPEAL TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT AND FOR EXPEDITED BRIEFING AND CONSIDERATION**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ......................................................................................................... 1

I.    THE ECUADORIAN PLAINTIFFS' AND WEINBERG GROUP'S
      APPEAL RAISES SERIOUS LEGAL QUESTIONS WARRANTING A
      STAY ........................................................................................................ 2

II.   THE ECUADORIAN PLAINTIFFS AND WEINBERG GROUP WILL
      SUFFER IRREPARABLE INJURY ABSENT A STAY ..................................... 5

      A.    This Court's Orders Contemplate the Immediate Disclosure of
            Documents Claimed Privileged to an Active Litigation Adversary .......... 5

      B.    The Court's Denial of the Ecuadorian Plaintiffs' and Weinberg
            Group's Application for a Protective Order Exponentially
            Increases the Prejudice Visited on the Parties ........................................... 6

III.  CHEVRON WILL NOT BE PREJUDICED BY A STAY PENDING
      APPELLATE REVIEW.................................................................................. 7

      A.    The 30(b)(6) Deposition Noticed for September 15, 2011 ........................ 8

      B.    The End of Fact Discovery on September 15, 2011 ................................. 10

      C.    The Ecuadorian Plaintiffs and Weinberg Group Would Seek, and
            Consent to, an Accelerated Briefing Schedule ......................................... 11

CONCLUSION.................................................................................................... 12

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Corbell v. Norton*,
  334 F.3d 1128 (D.C. Cir. 2003) ..............................................................................................3

*Cuomo v. U.S. Nuclear Regulatory Comm'n*,
  772 F.2d 972 (D.C. Cir. 1985) ...............................................................................................2

*Haines v. Liggett Group, Inc.*,
  975 F.2d 81 (3d Cir. 1992) .....................................................................................................6

*Hilton v. Braunskill*,
  481 U.S. 770 (1987) ...............................................................................................................2

*In re Ford Motor Co.*,
  110 F.3d 954 (3d Cir. 1997) ................................................................................................3, 5

*In re Sealed Case*,
  754 F.2d. 395 (D.C. Cir. 1985) ..............................................................................................4

*Peck v. Upshur County Bd. of Educ.*,
  941 F. Supp. 1478 (N.D. W. Va. 1996) ..................................................................................2

*Population Inst. V. McPherson*,
  797 F.2d 1062 (D.C. Cir. 1986) .............................................................................................2

*United States v. Diageo, Inc.*,
  No. Civ.02-MC- 1, 2003 WL 21254778 (D. Minn. April 29, 2003) ........................................5

*United States v. Jones*,
  No. 2:99-MC-71-, 1999 WL 1057210 (D.S.C. Oct. 5, 1999) ...................................................5

*United States v. Philip Morris, Inc.*,
  354 U.S. App. D.C. 171, 314 F.3d 612 (D.C. Cir. 2003) .....................................................3, 5

**RULES**

Fed. R. Civ. P. 45 ........................................................................................................................9

**STATUTES**

28 U.S.C. § 1782..........................................................................................................................8

## PRELIMINARY STATEMENT

Late yesterday afternoon, this Court denied in full Defendants Hugo Gerardo Camacho Naranjo's and Javier Piaguaje Payguaje's (the "Ecuadorian Plaintiffs") and the Weinberg Group's motion for reconsideration of this Court's September 8, 2011 Order and granted, by virtue of application of the crime-fraud exception, Chevron Corporation's motion to compel over 1,000 privileged documents by 5:49 p.m. today.  Respectfully, the Ecuadorian Plaintiffs and Weinberg Group do not seek to "run out the clock" or tactically delay to avoid production.  The movants seek to pursue all available avenues of appeal to safeguard the documents they believe to be privileged.  In this motion for stay, the movants concede and represent that they will produce documents even after the close of fact discovery in the event their appeals are unsuccessful.  However, if the cat is let out of the bag prior to appellate review, there can be no doubt that the movants will be forever harmed by the disclosure of their protected materials.

In light of the immediacy and magnitude of the injury to the Ecuadorian Plaintiffs and the Weinberg Group (including its employees and other clients whose confidences are disclosed), the movants further request expedited briefing and consideration of the motion.  The parties seek a stay of the Orders in their entirety, based on the above understanding of the Orders' scope, about which the Ecuadorian Plaintiffs and Weinberg Group plan to pursue all available avenues of appeal.  In the event this Court cannot promptly rule or has not ruled on the Weinberg Group's and Ecuadorian Plaintiffs' motion, they intend to present an emergency stay request to the Court of Appeals later today for a temporary bridge stay to allow time to brief the issues before the District of Columbia Circuit.

## ARGUMENT

In light of the Ecuadorian Plaintiffs' and Weinberg Group's decision to appeal the Court's Orders, the weighty issues that must be resolved on appeal, and the irreparable injury

1

that the Ecuadorian Plaintiffs and Weinberg Group would suffer if the Orders remain in place pending resolution of their appeal, the Ecuadorian Plaintiffs and Weinberg Group respectfully seek a stay.  Courts consider four factors in assessing the propriety of granting a motion for stay pending appeal:

> (1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay.

*Cuomo v. U.S. Nuclear Regulatory Comm'n*, 772 F.2d 972, 974 (D.C. Cir. 1985).  A stay may be granted with either a high probability of success and some injury, or vice versa.  *See id.*

These four factors are not a "set of rigid rules," but rather necessitate "individualized judgments in each case."  *Hilton v. Braunskill*, 481 U.S. 770, 777 (1987).  Having already ruled against the movant on the underlying legal and factual questions, a court need not be convinced of an "absolute certainty of success" on appeal, *i.e.*, "*[i]t will ordinarily be enough that the [movant] has raised serious legal questions* going to the merits so serious, substantial, difficult as to make them a fair ground of litigation . . . ."  *Population Inst. V. McPherson*, 797 F.2d 1062, 1078 (D.C. Cir. 1986) (emphasis added) (citation and internal quotations omitted); *see also Peck v. Upshur County Bd. of Educ.*, 941 F. Supp. 1478, 1481 (N.D. W. Va. 1996) ("To find that plaintiffs have a strong likelihood of success on appeal, the Court need not harbor serious doubts concerning the correctness of its decision.").

## I.   THE ECUADORIAN PLAINTIFFS' AND WEINBERG GROUP'S APPEAL RAISES SERIOUS LEGAL QUESTIONS WARRANTING A STAY

The Ecuadorian Plaintiffs and Weinberg Group respectfully assert that there is a substantial likelihood that they will ultimately prevail on appeal.  Even if the Court reaches a different assessment, it cannot be disputed that the appeal raises serious legal questions

concerning the appropriate application of the crime-fraud exception in the District of Columbia Circuit.  This Court should permit the District of Columbia Circuit to consider the privilege claims at issue here before "[t]he cat is [] out of the bag."  *See In re Ford Motor Co.*, 110 F.3d 954, 962-64 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. . . . The cat is already out of the bag. . . . There is no way to unscramble the egg scrambled by the disclosure . . . ."); *see also United States v. Philip Morris, Inc.*, 354 U.S. App. D.C. 171, 314 F.3d 612, 621-22 (D.C. Cir. 2003).

First, the Court applied the crime-fraud exception finding it was bound by the summary of evidence contained in Judge Kaplan's Preliminary Injunction opinion:  an opinion which did not make any findings as to the crime-fraud exception and which is presently on expedited appeal to the United States Court of Appeals for the Second Circuit with arguments scheduled for this Friday, September 16, 2011.[1]  The specific "finding" to which this Court felt compelled to give comity did no more than, in the context of analyzing the standards of a preliminary injunction, state that Chevron "present[ed] a fair ground for litigation as to whether the Ecuadorian judgment [was] a result of fraud practiced on the Ecuadorian tribunal."  (Dkt. 30 at 3 (quoting *Chevron*, 768 F. Supp. 2d at 637).)  If that is the standard sufficient to invoke the crime-fraud exception, then virtually every case in which a fraud cause of action is not dismissed at the pleading stage would satisfy it.  Second, the Court found that the September 16, 2010 expert

---

[1] Notably, when Magistrate Judge Francis – Judge Kaplan's assigned Magistrate Judge – held that there was *prima facie* evidence of a fraud based on the September 16, 2010 expert reports, Judge Kaplan stayed this decision – and the production of thousands of documents that were the subject of the stay Magistrate Judge Francis order.  (Dkt. 27-02.)  Apparently, the court that imposed the September 15, 2011 discovery close date and that wrote the Preliminary Injunction opinion now cited by this Court apparently regards as serious the Ecuadorian Plaintiffs' substantial objections to Magistrate Judge Francis' order.

reports were "part of a fraud upon the Ecuadorian court," (Dkt. 24, at 8), notwithstanding the fact

that the evidence of "fraud" was previously presented to the Ecuadorian court and no finding of

fraud was made and that, regardless of the law of the Southern District of New York, controlling

District of Columbia Circuit precedent recognizes that "fraud on the court is a narrow concept,

limited to the most egregious conduct involving a corruption of the judicial process itself."

*Corbell v. Norton*, 334 F.3d 1128, 1148 (D.C. Cir. 2003).   Third, the Court did not apply the

second required prong of the crime-fraud exception, even though the District of Columbia

Circuit requires such application.  *See In re Sealed Case*, 754 F.2d 395, 399 (D.C. Cir. 1985)

(identifying second prong "made in furtherance of a crime, fraud, or other misconduct").  When

the movants identified the fact that not even Chevron can claim that every document "furthered"

the alleged "fraud" – including identified categories of documents such as invoice and internal

administrative process communications, research of the scientific issues involved in the

Ecuadorian litigation, and documents related to efforts to locate prospective (but not retained)

experts, (*see* Dkt. 27-1 at 7) – rather than order only specific categories of documents produced,

this Court found each and every of the more than 1,000 documents to have waived all claims of

privilege, (Dkt. 30).  The Court did so without ever having reviewed even a single document, and

even then shifted the burden onto the Ecuadorian Plaintiffs and Weinberg Group to have

requested an *in camera* review in advance of any finding of *prima facie* evidence of a fraud and

referred to the failure to request *in camera* review earlier as "gamesmanship."  (Dkt. 30, at 4.)

For the reasons set forth below, *see supra* Part III.A, Chevron is the party engaging in

gamesmanship – making representations to the Southern District of New York contrary to its

positions here in the District for the District of Columbia in an apparent attempt to mislead the

Court into finding urgency where there is none.  Respectfully, for these and other reasons, the

Ecuadorian Plaintiffs and Weinberg Group disagree with the findings of this Court, believe that they have set forth good-faith and substantial legal issues for appellate review, and anticipate that they are likely to succeed on the merits before the District of Columbia Circuit.

## II.   THE ECUADORIAN PLAINTIFFS AND WEINBERG GROUP WILL SUFFER IRREPARABLE INJURY ABSENT A STAY

### A.   This Court's Orders Contemplate the Immediate Disclosure of Documents Claimed Privileged to an Active Litigation Adversary

It is beyond question that a party is irreparably harmed by being compelled to produce to his adversary documents or other materials protected by the attorney-client and/or work product privileges.  *See United States v. Philip Morris, Inc.*, 354 U.S. App. D.C. 171, 314 F.3d 612, 621-22 (D.C. Cir. 2003); *see also In re Ford Motor Co.*, 110 F.3d 954, 962-64 (3d Cir. 1997) ("Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. . . . The cat is already out of the bag. . . . There is no way to unscramble the egg scrambled by the disclosure . . . .").

Ultimately, given the substantial privilege issues at stake, even if the Ecuadorian Plaintiffs and Weinberg Group made *no showing at all* of success on the merits, well-reasoned precedent suggests that this Court should stay enforcement of its decision until the District of Columbia Circuit has had the opportunity to consider the parties' claims at issue.  *United States v. Diageo, Inc.*, No. Civ.02-MC- 1, 2003 WL 21254778, at *1 (D. Minn. April 29, 2003) (granting stay pending appeal of an order to compel, even though defendant had "not made a strong showing on the merits," because of "the strong value the law places on the attorney-client privilege," explaining that if defendant "were required to produce the document now and then was successful on appeal [defendant] would be irreparably harmed because [defendant] would not be able to recover the privileged nature of the document"); *United States v. Jones*, No. 2:99-MC-71-, 1999 WL 1057210, at *2 (D.S.C. Oct. 5, 1999) (granting stay pending appeal of its

order requiring production of documents because "if the requested stay is denied, any privileged information which Jones may inadvertently divulge will be forever" and emphasizing that "[t]he important interests that the attorney/client privilege protects will be destroyed and such harm to Carraway will be irreparable").  Because this Court has ordered disclosed the redacted materials mixed into otherwise responsive documents, including other client work, personal communications, and personal identifiers including bank accounts and Social Security numbers, the Weinberg Group will suffer its own unique and irreparable harm, separate and apart from the disclosure of privileged documents.

> **B.**     **The Court's Denial of the Ecuadorian Plaintiffs' and Weinberg Group's Application for a Protective Order Exponentially Increases the Prejudice Visited on the Parties**

Respectfully, this Court's denial of a protective order limiting Chevron's use of the documents to the underlying litigation (and to filing the documents under seal) exponentially increases the injury and need for appellate review of the serious legal questions presented to this Court.   As one United States Court of Appeals has noted, "[b]ecause of the sensitivity surrounding the attorney-client privilege, care must be taken that, following any determination that an exception [to the privilege] applies, the matters covered by the exception be kept under seal or appropriate court-imposed privacy procedures until all avenues of appeal are exhausted." *See Haines v. Liggett Group, Inc.*, 975 F.2d 81, 97 (3d Cir. 1992).

Although this Court observed that "the Weinberg Group fails to point to any legal concept or case that would prohibit" Chevron using the claimed-privileged documents in the de novo Ecuadorian appellate proceedings or international arbitration pending in the Hague, (Dkt. 30, at 5), the absence of case law on this point is precisely why appellate review is appropriate here.  Chevron cites no cases in which claimed-privileged documents (subpoenaed only for use in a United States proceeding) are ordered disclosed without a protective order in a circumstance

where those claimed-privileged documents can be used to permanently and irreparably infect de novo foreign proceedings abroad – while the party claiming privileges vigorously seeks every available avenue of appellate review in the United States.

Ultimately, at issue are claimed-privileged documents.  Even if this Court reached a different assessment, in the event the appellate court finds that the claims of privilege and work product here were properly asserted, the absence of a protective order will have served to work substantial prejudice on the Ecuadorian Plaintiffs.  In this Court's effort to maintain the status quo, the Ecuadorian Plaintiffs and Weinberg Group are grateful this Court "ask[ed] the lawyers for Chevron . . . as a courtesy to me, not to publicly disclose the documents at this time" except if they wish to publicly disclose the documents – in which case the company "should" seek permission from Judge Kaplan or this Court.  (Dkt. 30, at 5 (emphasis added).)  However, basing such a request on principles of "courtesy" is not enough to protect the interests of the Ecuadorian Plaintiffs and Weinberg Group from the harm that the disclosure and use of their claim-privileged documents will have particularly where, as here, (a) this Court does not retain jurisdiction to enforce a request of courtesy, and (b) it unlikely this Court would be able to punish any breach or violation of its courtesy request with contempt or order the protected materials destroyed or returned to counsel in a circumstance where, as here, the Court specifically refused to order a protective order in the first instance.

## III.   CHEVRON WILL NOT BE PREJUDICED BY A STAY PENDING APPELLATE REVIEW

Despite Chevron preemptively raising the issue of a stay in their papers and this Court addressing a possible stay on Chevron's request, this is the *first* time that the Ecuadorian Plaintiffs and Weinberg Group are requesting a stay pending appeal and the first time they are permitted to respond to Chevron's false cries of urgency for the documents.  This Court earlier

found that "[d]iscovery will close in 48 hours and my staying my decision would deprive Chevron of the documents and in effect render the deposition it has scheduled of the Weinberg Group nearly meaningless." (Dkt. 30, at 3.) The Court made these findings without a request to stay before it and without the benefit of the Ecuadorian Plaintiffs' and Weinberg Group's response to Chevron's claims of urgency. Respectfully, for the reasons expressed herein, Chevron will not be prejudiced by a stay to allow for appellate review.

### A.      The 30(b)(6) Deposition Noticed for September 15, 2011

Notwithstanding the Court's precipitous conclusion about gamesmanship, the true party engaged in tactical gamesmanship here is Chevron. Chevron has known of the existence of the Weinberg Group and its role in this litigation since *before initiating* the Southern District of New York proceedings – the company sought 28 U.S.C. § 1782 discovery against Weinberg Group January 21, 2011, though it cannot be credibly disputed that Chevron obtained the "evidence" at issue long before that date. (*See generally* No. 1:11-mc-00030-CKK, Dkt. 1 (Application for Discovery from Weinberg Group).) Chevron served its document subpoena (the subject of the instant motion to compel) on the Weinberg Group on May 20, 2011 and there can be no credible dispute that the company was able to serve a 30(b)(6) subpoena at or near the same time.

Yet the company waited until *last Friday, September 9, 2011* to serve on the Weinberg Group a 30(b)(6) subpoena.[2] That 30(b)(6) subpoena purports to impose on the Weinberg Group the requirement that the company prepare multiple witnesses to testify regarding *32 deposition topics* for a 30(b)(6) deposition **noticed only *four court days* earlier**. (*See* Gomez Declaration ("Gomez Decl."), Ex. 1.)

---

[2] Though the subpoena is dated September 8, 2011, it was not served on the Weinberg Group until September 9, 2011.

It is especially ironic that Chevron can argue with a straight face to this Court that the deposition on the Weinberg Group will and should occur on September 15, when in the underlying litigation before Judge Kaplan, Chevron *just two days ago* submitted a motion for a protective order arguing that the company should not be required produce two witnesses subpoenaed pursuant to Federal Rule of Civil Procedure 45 on the basis that the Notices (which were served **on the same day Chevron served the Weinberg Group**) were "less than the 'reasonable notice' required by the Federal Rules of Civil Procedure," that "[i]ndeed, notice periods more than twice as long have been held to be insufficient," and that "when depositions are noticed for 'only hours before the discovery cut-off,' courts have found them unduly inconvenient." (Gomez Decl., Ex. 2 at 4.) According to Chevron, "the [Ecuadorian Plaintiffs] have been aware of [the witness] since the beginning of discovery, but chose to wait until the eleventh hour to seek to depose him" and "[t]his alone is sufficient grounds for granting the protective order." (*Id.*) Yet, Chevron sees no problem with its own virtually identical tactic with respect to the Weinberg Group. Indeed, Chevron's conduct here is even more oppressive that that about which it complains here, as Chevron seeks to depose the *non-party* Weinberg Group on *thirty-two* topics, as opposed to the far less number of topics which the Chevron witnesses' depositions are intended to cover. Chevron cannot have it both ways.

Accordingly, unless Chevron agrees to withdraw the 30(b)(6) subpoena directed to the Weinberg Group, the Ecuadorian Plaintiffs will file today a new, miscellaneous civil action seeking to quash the 30(b)(6) subpoena propounded on the Weinberg Group.[3] There is no cause

---

[3] It cannot be said that the Ecuadorian Plaintiffs or Weinberg Group have delayed or are delaying in filing a motion to quash the 30(b)(6) subpoena directed to the Weinberg Group. In fact, today is only the third Court business day since the subpoena was served on the Weinberg Group last Friday.

to order the disclosure of the privileged documents in anticipation of a 30(b)(6) deposition which, based on Chevron's own representations, is presumptively improper.

### B.    The End of Fact Discovery on September 15, 2011

Neither the Ecuadorian Plaintiffs nor the Weinberg Group are engaged in an effort to "run[] out the clock" – and the Court's presumption that they are seeking to delay production until just after September 15, 2011 in an effort to then refuse to comply with this Court's Orders on the basis of the end of fact discovery in the underlying proceeding is simply incorrect.  (Dkt. 30, at 2.)  If the Court has any concern about that (and it has no reason to), the Ecuadorian Plaintiffs and Weinberg Group hereby represent that if their requests here and on appeal are unsuccessful and they are ultimately ordered to make production of documents after the September 15, 2011 deadline, neither the Ecuadorian Plaintiffs nor the Weinberg Group would object to the production of documents on the basis of the September 15, 2011 discovery cutoff date as to Weinberg Group documents and would produce the documents without Chevron having to seek an extension of the discovery cutoff date (which the company, parenthetically, has not done even though it claims its need for documents in this proceeding is so great).

The movants note that they have heretofore briefed the issues before this Court at an extraordinary pace and have, in fact, taken steps to expedite consideration of Chevron's motion to compel.  Both the Ecuadorian Plaintiffs and Weinberg Group consented to the referral of Chevron's motion to compel – a result "strongly encouraged" by Judge Kollar-Kotelly because of the likelihood that such consent "may very well result in a more prompt resolution of the pending dispute."  (Dkt. 10, at 3; Dkt. 13.)  Within one day of this Court's order granting Chevron's motion to compel, (Dkt. 24), the Ecuadorian Plaintiffs and Weinberg Group filed in good faith a 12-page motion for reconsideration, (Dkt. 27-1).  The instant stay motion is made within hours of the Court's Order issued yesterday.  (Dkt. 30.)

10

C.      **The Ecuadorian Plaintiffs and Weinberg Group Would Seek, and Consent to, an Accelerated Briefing Schedule**

This is not a circumstance in which appellate review would take years to resolve the privilege claims at issue.   The Ecuadorian Plaintiffs would promptly file, at first available opportunity, a request for expedited consideration of all appellate relief sought and would file its briefing as soon as practicable.   Chevron could, at any time, move to lift the stay after the Court has had opportunity to consider briefing on the merits.   If Chevron's claims are as meritorious as the company claims, Chevron will have access to the documents it seeks well before the November 14, 2011 trial date in the Southern District of New York.

\* \* \*

The movants are convinced that the moment Chevron obtains the documents at issue, the company will seek to use and file such documents in proceedings in Ecuador and in the international arbitration between the Republic of Ecuador and Chevron pending in the Hague. While the Court has stated that it has no evidence of such intended use before it, history bears that out and Chevron has not in this proceeding disputed that it has the intention of doing so now.

As a result, the privileged documents will be disseminated over three continents, causing irreversible harm to the Ecuadorian Plaintiffs.[4]   If relief is ultimately granted, Chevron does not dispute that there would be no further appellate remedy in the Ecuadorian proceedings as to the improper use or reliance on privileged documents and that the Ecuadorian Plaintiffs do not have

---

[4] The Ecuadorian Plaintiffs and Weinberg Group remind that the Court that although the Weinberg Group indicated to Judge Kollar-Kotelly that the company was physically capable of producing documents in compliance with its Court-imposed obligations within twenty-fours of such an Order issuing, (Dkt. 9, at 3), that indication certainly did not contemplate that the Court would order *every single* document produced nor can such an indication be construed as an agreement to forego the right to seek all available, good-faith remedies prior to the disclosure of privileged documents.  Of course, Judge Kollar-Kotelly "strongly encouraged" the parties to consider consenting to referral to Your Honor (Weinberg Group and the Ecuadorian Plaintiffs did), which Judge Kollar-Kotelly observed "may very well result in a more prompt resolution of the pending dispute and provide *additional time for any required production*." (Dkt. 10, at 3 (emphasis added).)

standing to object to their use in the international arbitration.  Chevron will not be prejudiced by any stay:  the company has already obtained extensive discovery from the September 16, 2010 experts, including their documents and depositions.   Finally, Chevron always has had at its disposal the option of seeking a reasonable extension to the Southern District of New York's fact discovery deadline, given the fact that the trial does not begin until the second half of November. In any event, should their appeals fail the Ecuadorian Plaintiffs and Weinberg Group hereby consent to the production of Weinberg Group documents after the close of fact discovery given the extraordinary circumstances and privilege issues and to allow for the opportunity to pursue all available appellate remedies.

## CONCLUSION

For all of the foregoing reasons, the Ecuadorian Plaintiffs and the Weinberg Group respectfully request that this Court stay its Orders of September 8 and 13, 2011 pending appellate review by the United States Court of Appeals for the District of Columbia Circuit.  If this Court is not inclined to stay its decision for the duration of the appeal, the Ecuadorian Plaintiffs and Weinberg Group request a temporary, bridge stay to allow the parties the opportunity to brief the merits of a stay pending appeal to the District of Columbia Circuit.

Respectfully submitted,

BY:     RICHARD D. CARTER, PLLC

*/s/Richard Carter*
Richard Carter, DC Bar #339358
CARTER COLEMAN & RAGLAND
602 Cameron Street
Alexandria, VA 22314
T: (703) 739-4200 Ext. 207
F. (703) 739-4210
Email: rcarter@colemanragland.com

*Attorney for the Weinberg Group,*
*Hugo Gerardo Camacho Naranjo and Javier*
*Piaguaje Payaguaje*

BY:     */s/Julio C. Gomez*
Julio C. Gomez (*pro hac vice pending*)
GOMEZ LLC
ATTORNEY AT LAW
The Trump Building
40 Wall Street, 28th Floor
New York, NY 10005
T: 212-400-7150
F: 212-400-7151
E-mail: jgomez@gomezllc.com

*Attorney for the Weinberg Group, Hugo Gerardo*
*Camacho Naranjo and Javier Piaguaje Payaguaje*

13