## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CHEVRON CORPORATION,    :
:
       Petitioner,    :
:
    v.    :        Misc. Action No. 11-409 (JMF)
:
THE WEINBERG GROUP,    :
:
       Respondent.    :
:

## MEMORANDUM OPINION

This case originally came before me on petitioner Chevron Corporation's <u>Motion to
Compel the Production of Documents from the Weinberg Group Pursuant to Federal Rule of
Civil Procedure 45</u> [#1].[1]  Due to the complex procedural and factual nature of this case, I will
begin by summarizing the proceedings thus far.

## INTRODUCTION

### I.    The Civil Action in the Southern District of New York

The larger case behind the instant motion was previously summarized as follows: "Some
Ecuadorian citizens [the Lago Agrio Plaintiffs or 'LAPs'] sued Chevron in an Ecuador court,
alleging that Chevron was responsible for environmental damage there." <u>Chevron Corp. v.
Weinberg Group</u>, 682 F.3d 96, 97 (D.C. Cir. 2012).  Lead counsel for the LAPs was Steven
Donziger.  The LAPs prevailed in the Ecuadorian court and secured a multi-billion dollar
judgment against Chevron.  The nearly endless litigation that has now been spread out over

---

[1] Initial citations to pleadings or briefings will be cited by the name of the document, docket
number, and page number.  All subsequent references to that document will be referenced by
docket number and page number only.

courts all across America[2] is focused on Chevron's attempts to gain discovery in support of its effort to prevent that judgment from being executed.  The centerpiece of Chevron's effort is a Racketeer Influenced and Corrupt Organizations Act ("RICO") action, 18 U.S.C. §§ 1961-1968,[3] by Chevron against Donziger and his alleged conspirators, currently pending before the Southern District of New York.  See, Chevron Corp. v. Donziger, Civil Action No. 11-0691 (S.D.N.Y.), Amended Complaint [#283] ("SDNY Amended Complaint").

## II.     The Allegations of Fraud

According to Chevron, the ultimate judgment from the Ecuadorian court was procured by fraud.  That judgment relied heavily on a report prepared by a court-appointed expert, Richard Stalin Cabrera, who was tasked with making a neutral and independent assessment of the environmental damage done by Chevron.  However, it eventually came to light that Cabrera was not, in fact, neutral. Memorandum in Support of Chevron Corporation's Motion to Compel [#1-1] at 4-5; SDNY Amended Complaint [#283] ¶¶ 122-184.  Indeed, it appeared that LAPs' representatives worked directly with Cabrera to draft the report.  Chevron alleges that, as LAPs' authorship of the Cabrera report started to come to light, LAPs attempted to "cleanse" the report by hiring the Weinberg Group ("Weinberg"), a consulting firm.  Weinberg retained six experts, denigrated by Chevron, as "cleansing experts," who "cleansed" the Cabrera report by supposedly conducting their own analyses and submitting what the experts and Weinberg purported to be a new, independent report of the various types of environmental damage done by Chevron in Ecuador. [#1-1] at 5.  According to Chevron, the "independence" of the "clean" report was a

---

[2] See Memorandum of Law In Opposition to Chevron's Corporation's Amended Motion to Compel the Weinberg Group to Produce Documents Pursuant to Federal Rule of Civil Procedure 45 [#20] at 23, n. 16 for a partial listing of some of these cases.
[3] All references to the United States Code are to the electronic versions on Westlaw or LexisNexis.

farce—all Donziger and his conspirators did was resubmit the findings of the Cabrera report in a seemingly different form.  Instead of being based on fresh information and independent insights, the "clean" report was just the old Cabrera report in disguise. Id.; Complaint, ¶¶ 190-198.

Weinberg insists that the work of the six experts it retained was, in fact, independent. Chevron has taken their depositions and secured from them all the documents that they used or relied upon in creating their reports. Memorandum of Law in Opposition to Chevron Corp. Amended Motion to Compel the Weinberg Group to Produce Documents [#20] at 9-10. During those depositions, the experts Weinberg made available to Donziger and LAPs indicated that no one (such as Donziger or his alleged conspirators) assisted them, and that the conclusions they reached were their own. Id.

Chevron's case against Weinberg in the Southern District of New York asserts that Weinberg fits into the Donziger-led RICO conspiracy charge in two ways: 1) Weinberg retained the cleansing experts and led the cleansing effort; and 2) forensic analysis may establish that LAPs actually drafted the Ecuadorian judgment against Chevron and "Weinberg likely has versions of [] internal LAP documents [that were used in the Ecuadorian judgment] and possible knowledge about their use in the judgment—a central issue in the SDNY Action." [#1-1] at 2. By a subpoena issued pursuant to Federal Rule of Civil Procedure 45, Chevron demanded Weinberg produce these internal documents and others that may show Weinberg's involvement in procuring a fraudulent judgment in Ecuador. Id.

Initially, I concluded that certain of Judge Kaplan's findings in the SDNY action compelled the decision that any claim of privilege by Weinberg yielded to the crime/fraud exception.  The reversal by the Second Circuit of Judge Kaplan's decision, containing the

findings upon which my decision was based, led to the reversal of my opinion by the D.C.

Circuit.  See Chevron Corp., 682 F.3d at 98.

     This brings us to where we are today.  The motion to compel must be decided anew to

ensure that Chevron has the documents it needs to move forward in its larger case.  Although

many documents were disclosed under my previous order granting Chevron's motion to compel,

the documents to which Weinberg claimed a privilege were ordered, under an emergency motion

by Weinberg, to be placed in a sealed container pending the outcome of this matter. Minute

Order dated 6/25/12.

     Now I must resolve whether these documents are properly withheld under a claim of

privilege.  Weinberg has produced a limited number of documents in full but claims work

product or attorney-client privilege to many more.  Chevron objects to Weinberg's claim of

privilege, arguing that the materials are either not privileged in the first place, Memorandum in

Support of Chevron Corporation's Amended Motion to Compel [#17] at 17-18, or if they are, the

crime/fraud exception applies, id. at 10-12.  Before any decision as to the crime/fraud exception

can be reached, I must first decide which documents are, in fact, properly withheld under a

legitimate claim of privilege.

## ANALYSIS

### I.     The Privilege Log

     Weinberg asserts the privileges it claims via a privilege log.

     Federal Rule of Civil Procedure 26(b)(5)(A) requires that a party that claims privilege as

to information must expressly make the claim and "describe the nature of the documents . . . not

produced or disclosed – and do so in a manner that, without revealing information itself

privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P.

26(b)(5)(A)(ii).  Thus, the intendment to the Rule is clear: the opposing party should be able,

from the entry in the log itself, to assess whether the claim of privilege is valid.  An entry that

would meet this requirement might be: "Letter from Client X to Lawyer Y seeking advice about

whether certain transaction was taxable."  From the entry itself the opposing party [and

ultimately the judge] should be able to tell that the information not being disclosed is properly

claimed as privileged, since it was a communication from a client, intended to be confidential,

that sought legal advice.  <u>Ventro v. IRS</u>, 714 F. Supp. 3d 137, 151 (D.D.C. 2010).

        Unfortunately, all too many privilege logs would describe the very same document as

"Letter from client to lawyer—attorney client privilege."  That entry is insufficient since there is

no indication in the log of why the document was intended to be confidential.  If the client, for

example, sought the guidance from an attorney intending to make the document available to the

IRS, he may have never intended the letter to the lawyer to be confidential; to the contrary, he

intended to make it available to the IRS.  This example also discloses another problem with an

insufficient log—it may disguise a flawed understanding of the privilege.  In this case, the

insufficient entry may well be premised on the incorrect notion that all communications between

lawyer and client are privileged, even though the client does not intend the communication to be

confidential, but instead intends to disclose it to some third party.  <u>See</u> <u>Mead Data Central, Inc. v.</u>

<u>U.S. Dep't of Air Force</u>, 566 F.2d 242, 255 (D.C. Cir. 1977).  The sufficient entry at least warns

the opposing party of that possibility, while the insufficient one does not.  Despite the difference

between the two entries and the obvious insufficiency of the latter, it is startling how common

the insufficient entry is in most privilege logs.

Moreover, whatever was hoped to be accomplished when Federal Rule 26(b)(5)(A)(ii) was added in 1970,[4] intervening technological changes have rendered it even more difficult to apply. First, in the era of "big data," in which storage capacity is cheap and several bankers' boxes of documents can be stored with a keystroke on a three inch thumb drive, there are simply more documents that everyone is keeping and a concomitant necessity to log more of them. This, in turn, had led to the mechanically produced privilege log, in which a database is created and automatically produces entries for each of the privileged documents. One of the fields of the database is the description of the document, and a second is the claim of privilege itself. So, using the example above, the database would show the communication on August 1, 2010 (one field) from Smith (second field) to Doe (third field), "letter from Smith to Doe seeking legal advice about whether certain transaction was taxable" (fourth field) and "attorney client privilege" (fifth field).

The problem is that the fourth field is supposed to be comporting with the Rule's requirement that the log entry describe the document in a manner sufficient for the other party to assess whether the claim of privilege genuinely applies. Fed. R. Civ. P. 26(b)(5)(A)(ii). But, the descriptor in the modern database has become generic; it is not created by a human being evaluating the actual, specific contents of that particular document. Instead, the human being creates one description and the software repeats that description for all the entries for which the human being believes that description is appropriate. For entry after entry, one part of the description for a particular category is exactly the same. This raises the term "boilerplate" to an art form, resulting in the modern privilege log being as expensive to produce as it is useless. In the privilege log in this case, for example, the phrase for e-mail entries between Weinberg

---

[4] See Advisory Committee Notes to the 1970 Amendment, Fed. R. Civ. P. 26(b)(5)(A)(ii).

experts is always the same: "Email between and among Ecuadorian Plaintiffs' consulting experts." <u>Exhibit 24 to Declaration of Rebecca Gray in Support of Chevron Corporation's Amended Motion to Compel</u> [#18-24].  The entry then always contains the phrase: "prepared in furtherance of litigation."  Thus, the first entry is typical of the rest: "E[-]mail between and among Ecuadorian Plaintiffs consulting experts prepared in furtherance of litigation regarding rebuttal report and attaching same." [#18-24] at 1.  Stripped of the mechanical boilerplate, this entry could mean that the e-mail contains a substantive discussion about the report, or that it simply transmits the report with a note that says: "Here is the rebuttal report.  I would appreciate your comments."  The former—the substantive discussion—may legitimately claim the work product privilege, while the latter—mere transmittal of the report—trivializes it.

In an earlier time, the insufficiency of the log defaulted to *in camera* review by the judge. Yet, in cases such as this, the sheer number of documents on a log may make that impossible. Here, I would have to review 9,171 pages of documents.  That seems inconceivable given my advanced years.  In all seriousness, a judge, unlike lawyers who have resources for culling through documents, cannot use technology-assisted review to do the review more efficiently.

Moreover, the mechanical entries which purport to describe an entire document ignore the obligation that initially rested upon Weinberg, and which I am about to re-impose.  Rule 26 provides that the work product privilege yields upon a showing that "a party has a substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." Fed. R. Civ. P. 26(b)(3)(A)(iii).  I am convinced that Chevron cannot make out its case that Weinberg played a role in the RICO conspiracy charged in the case before Judge Kaplan without some review of the documents in Weinberg's possession, and that there is no other means to secure information pertaining to that role without seeing what

Weinberg has.  The rule, however, also requires that the court protect from disclosure the "mental impressions, conclusions, opinions, or legal theories of party's attorney or other representative concerning the litigation." Fed. R. Civ. P. 26(b)(3)(B).  This leads to the familiar distinction between opinion work product, which is never discoverable, and factual work product, which is discoverable under the circumstances described above.  I have now concluded that Chevron has shown a substantial need for the factual work product which cannot be obtained through other means. Disability Rights Council v. Wash. Metro. Transit Auth., 242 F.R.D. 139, 143 (D.D.C. 2007).  Thus, the proper procedure here would be for Weinberg to produce those portions of the documents that are fact work product and redact those that are opinion work product, submitting with the documents a description of the excised material that complies with Rule 26 by explaining why the redacted portion qualifies for protection.

I am going to therefore require Weinberg to comply with this requirement in the manner I will soon describe.  I have found, however, that the existing privilege log and my knowledge of the case permits me to conclude that certain categories of documents are so clearly not protected by any privilege and that they therefore must be produced forthwith.

## II.     Attorney-Client Privilege

First, Weinberg claims the attorney-client privilege in some of the log entries.  To be blunt, the claim is mystifying.  The clients in this case are the LAPs who live in Ecuador.  It is impossible for there to be any attorney-client privilege between them and Weinberg, or the LAPs and the experts retained by Weinberg, since neither of the latter are lawyers.  Nor can there be any attorney-client privilege between Weinberg and Donziger and the members of his firm, since Weinberg is not a client of Donzinger.  Since there is nothing either in the log nor Weinberg's

submissions establishing the premise for an attorney-client privilege, it is disallowed wherever it is claimed.

## III.     Compensation Documents

Second, there are many entries in the log that pertain to the compensation of Weinberg, the invoices it submitted for payment, and agreements regarding Weinberg's compensation or the compensation of its subcontractors.  These bills, invoices, receipts and e-mails pertaining to compensation or the retention of Weinberg cannot possibly be prepared "in anticipation of litigation or for trial," as required for protection under the Federal Rules.  See Fed. R. Civ. P. 26(b)(3)(A).  Accordingly, all such documents will be turned over to Chevron forthwith, because any claims of privilege as to them are rejected.  In a separate Appendix, I denominate these documents by entries in the privilege log.

## IV.     Documents Used by Experts

Third, there are entries in the log (other than in the e-mail entries) to maps, diagrams, reports, memoranda, invoices, and receipts.  These begin with entry 7909 and go to the end of privilege log.

Initially, all invoices and agreements will be turned over immediately because, as I have just explained, documents pertaining to the compensation of Weinberg and its subcontracts or are not privileged.

Next, Weinberg has represented to me that the experts turned over to Chevron all the material upon which they relied for their reports.  I therefore do not understand whether the materials identified as maps, articles, and diagrams fell within that category and, if so, why they have not already been turned over.  I will therefore require that these materials be turned over to me *in camera* with an explanation by Weinberg's counsel, also submitted *in camera*, why these

documents were not already given to Chevron.  This pertains to Documents 7909 to the end of

the log, excluding receipts and invoices, which must be turned over immediately.

## V.     Other Entries

This leaves the remainder of the entries.  As to them we shall proceed as follows.

Weinberg will review each entry and redact from the document only that material which

qualifies as opinion work product because it would disclose the "mental impressions,

conclusions, opinions, or legal theories of a party's attorney or other representative concerning

the litigation." See Fed. R. Civ. P. 26(b)(3)(B).  For these purposes, I conclude that Weinberg is

the representative of the LAPs' counsel.  Weinberg will make a rolling production to Chevron of

the redacted documents at the rate of 100 per day until completed.  Accompanying that

production, Weinberg shall submit a document that explains, as to each redaction, why it

qualifies for opinion work product protection as I have defined it in this opinion.

I hope by this process to accomplish several things.  First, the discipline I am imposing

on Weinberg will, I hope, lead it to claim the privilege only where it is justified, *i.e.* when it

would be a useful expenditure of the parties and this Court's resources to devote any more effort

to that document.  I also hope that Weinberg will see the wisdom of abandoning any claim of

privilege as to meaningless documents that might be technically privileged but which are

insignificant.  To that end, I will gladly issue, on its application, an order pursuant to Rule 502(d)

of the Federal Rules of Evidence that would alleviate any concern it has about such a disclosure

constituting a waiver in any other state or federal proceeding.

Upon production, I am equally hopeful that Chevron will see from the gist of the

document that the redacted portion is insignificant, and conclude as well that further litigation

about it is unnecessary.  The point of all this is that Chevron must have the unprivileged

documents to prepare for its November 4, 2012 trial before Judge Kaplan, and the parties should try to accomplish that without seeing just how much more money they can spend on litigation in this Court.

Once the production is made, I will hold a hearing to narrow any remaining issues, including, of course, any claim by Chevron that Weinberg has forfeited any privilege or that the crime/fraud exception pertains to the redacted portion of the documents.

Finally, I cannot emphasize too strongly that I will hold counsel to the obligations imposed upon them by Rule 26(g) of the Federal Rules of Civil Procedure as so masterfully elucidated by Judge Grimm in <u>Mancia v. Mayflower Textile Servs. Co.</u>, 253 F.R.D. 354 (D. Md. 2008) ("Rule 26(g) charges those responsible for the success or failure of pretrial discovery—the trial judge and the lawyers for the adverse parties—with approaching the process properly: discovery must be initiated and responded to responsibly, in accordance with the letter and spirit of the discovery rules, to achieve a proper purpose . . . and be proportional to what is at issue in the litigation, and if it is not, the judge is expected to impose appropriate sanctions to punish and deter.").

I know that this opinion has made clear how tired I am of mechanically produced boilerplate privilege logs. I expect specific and clear claims of privilege as to each redaction made. I will hold counsel to their 26(g) obligations ruthlessly, and, at a minimum, hold that the privilege is waived whenever the obligations I am imposing are disobeyed.

An Order accompanies this Memorandum Opinion.

_____
JOHN M. FACCIOLA
UNITED STATES MAGISTRATE JUDGE

**APPENDIX A**

Invoices, agreements, and other documents not protected by the work product doctrine that must
be disclosed to Chevron Corporation immediately

| | | |
|---|---|---|
| 4953-4958 | 6354-6335 | 7638 |
| 4964 | 6367-6374 | 7647 |
| 4966 | 6376 | 7655-7675 |
| 4972 | 6378-6398 | 7734-7739 |
| 4877-4987 | 7028-7114 | 7744-7764 |
| 6171 | 7119-7144 | 7766-7771 |
| 6176 | 7248-7290 | 7774-7778 |
| 6178-6213 | 7293-7356 | 7788-7790 |
| 6217-6305 | 7360-7555 | 7862 |
| 6307-6314 | 7611-7633 | 7876-7878 |
| 6352 | 7636 | 7882 |